## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**DIANA M. NELSON**                     *

5015 Summerset Drive

Tipp City, Ohio   45371              *         Case No. 3:19 cv 0075

       Plaintiff,               *

vs.                           *

**PRUDENTIAL INSURANCE**       *

**COMPANY OF AMERICA**

Attention: Corporate Legal Counsel    *

751 Broad Street

Newark, New Jersey     07102      *

       Defendant.             *

_____

## COMPLAINT FOR WRONGFUL
## DENIAL OF ERISA BENEFITS

_____

Plaintiff Diana Nelson, for her Complaint against Defendant Prudential Insurance

Company of America ("Prudential"), states as follows:

### PARTIES

1.      At all times relevant herein, Plaintiff was a resident of Tipp City and Miami

County, Ohio.

2.      From 2009 until 2011, Plaintiff was an employee of Hospira, Inc., a national

pharmaceutical and medical device company.   Hospira was acquired by Pfizer, Inc. in 2015.

3.      Hospira established and maintained an employee welfare benefits program for

employees, including a group disability plan, designated as Group Policy No. 4671 (the "Plan"), which provided short and long term disability coverage.

4.      Upon information and belief, Defendant Prudential was the underwriter of benefits and the designated claims administrator for the Plan.

5.      At all relevant times herein, Plaintiff was a beneficiary under the Plan and entitled to seek benefits from it.

6.      At all relevant times herein, the administration of the Plan was governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

## JURISDICTION AND VENUE

7.      This is an action against Defendant for recovery of benefits under ERISA and within the jurisdiction of this Court pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. §1331.

8.      Pursuant to ERISA, 29 U.S.C. § 1132(e)(2), venue is properly laid in the Southern District of Ohio, Western Division at Dayton, because the breach of the Plan occurred in Miami County, Ohio.

## ALLEGATIONS OF FACT

9.      Plaintiff was employed by Hospira as a Critical Care Sales Specialist, a highly compensated medical sales position.

10.      Early in 2011, Plaintiff began planning to enhance her career options at Hospira by returning to school to become a Certified Registered Nurse Anesthetist (CRNA).   She wanted to apply for admission to the CRNA program at Wright State University, which required an applicant to be a licensed registered nurse and to have at least one year of experience as a critical care nurse. Plaintiff was a licensed nurse, but did not have the required experience as critical care nurse to enter the program.

2

11.     Plaintiff planned to work part-time on nights and weekends—while continuing her regular employment schedule with Hospira—until she had gained the necessary experience to qualify for the CRNA program.   To that end, she applied and was eventually hired for a part-time position at Atrium Medical Center in Middletown in November 2011.

12.     During this same period in 2011, Plaintiff was suffering from a combination of mental health conditions that included severe and unstable depression, a virulent mood disorder and severe post traumatic stress disorder.

13.     As her family's primary source of income, Plaintiff did not want to stop working at her Hospira job, where she earned over $140,000 in 2011.   But as she continued to experience what she described as "emotional meltdowns" with customers and her manager, she was persuaded by her manager and co-workers to focus on seeking effective treatment for her mental illness while also accessing disability leave that would allow her to protect her job.

14.     Plaintiff submitted a claim for disability benefits and ceased working at Hospira on December 2, 2011.   She nevertheless was determined that her inability to work would be only temporary, and persisted with her plan to work part-time at Atrium in order to qualify for the CRNA program.

15.     For Plaintiff to be eligible for disability income benefits under the Hospira Plan, Prudential must determine:

- you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to sickness or injury; and

- you are under the ***regular care*** of a ***doctor***; and

- you have a 20% or more loss in your ***monthly earnings*** due to that sickness or injury.

3

16.     To qualify for long term disability benefits, a claimant must be continuously disabled from the onset of the disabling illness through an elimination period of 180 days.

17.     Plaintiff began her orientation training to do part-time critical care nursing at Atrium in mid-December 2011.

18.     At the same time, Plaintiff also began three weeks of outpatient electroconvulsive therapy, known as ECT, a drastic treatment for the most severe cases of depression and psychosis. However, the ECT treatment caused Plaintiff additional unanticipated and problematic side effects, including memory loss, and further impaired her judgment and ability to function.

19.     Plaintiff did not disclose her ECT treatment to Atrium.

20.     Plaintiff spent her initial few weeks of the Atrium orientation period in reviews of hospital policies and relevant law.   When Plaintiff attempted to begin patient-care nursing duties in January 2012, she made many mistakes and was written up by her supervisors on three occasions.   Plaintiff was unable to complete the orientation period and was terminated by Atrium in February 2012.

21.     In March 2012, Plaintiff was admitted to an in-patient residential treatment center for her mental illness where she remained for the next three months.

22.     Prudential initially approved Plaintiff's claim for LTD benefits due to her mental illness treatment and hospitalization.   She became eligible for Plan LTD benefits on June 2, 2012.

23.     In March 2014, the Social Security Administration notified Plaintiff it determined she was totally disabled from performing any occupation as of December 2, 2011.

24.     Prudential paid Plaintiff LTD benefits for 24 months, or until June 2014, as the maximum benefit payable under the Plan for a disability resulting in whole or in part from a mental illness.

4

25.     However, Plaintiff appealed the termination of her claim based on cognitive difficulties related to the ECT treatments and a sleep disorder which caused unpredictable daytime sleepiness and work restrictions for "situations in which a loss of consciousness would pose harm to self or others."

26.     Based on medical reviews by its own neurology and occupational medicine specialists, Prudential approved Plaintiff's appeal and resumed paying her benefits through April 2016.

27.     As part of its continuing evaluation of her claim, Prudential obtained Plaintiff's tax returns indicating her employment with Atrium from December 2011 to February 2012.

28.     Prudential regarded Plaintiff's attempt to work for Atrium as proof she had the ability to perform duties consistent with her regular occupation at Hospira.   As a result, Prudential determined she had never been "disabled" under the terms of the Plan when her claim began in December 2011.

29.     In May 2016, Prudential informed Plaintiff that her claim was terminated and an overpayment in excess of $152,000 was created since benefits should never have been paid to her.

30.     Plaintiff twice submitted requests for appeal reviews to Prudential disputing its denial of Plaintiff's claim, its incorrect calculation of her benefit amount and its demands for repayment of the alleged overpayment of benefits.   Although Plaintiff was nominally employed for ten weeks in Atrium's nurse orientation training, she was never able to perform the "material and substantial duties" either of her regular occupation at Hospira, or as a critical care nurse in training for Atrium, due to her severe mental illness and the effects of the electroconvulsive therapy.

31.     Prudential denied both appeal requests and provided its final decision to deny the

claim on September 12, 2017.

32.     All statutory and conditions precedent have been complied with by Plaintiff prior to the institution of this action including, but not limited to, the exhaustion of all administrative appeals available under the Plan.

**COUNT I:**
**ACTION TO RECOVER LONG TERM DISABILITY BENEFITS**

33.     Plaintiff restates the allegations contained in paragraphs 1 through 32 above as if fully restated herein.

34.     Defendant has unfairly, wrongfully and arbitrarily denied Plaintiff's claim for LTD benefits under the Plan, and wrongfully demanded repayment from her of over $152,000 in previously paid disability benefits.

35.     Defendant's claim decision is contrary to the medical evidence in the administrative claim record.   Plaintiff was not capable of performing the material and substantial duties of her regular occupation with Hospira in December 2011 merely because she attempted—and failed—to work part-time for Atrium as a critical care nurse in training.

36.     In denying Plaintiff's claim for continued disability benefits, Defendant has rejected the results of its own contemporaneous disability evaluations of the Plaintiff as well as the total disability determination made by the Social Security Administration.

37.     As a result of Defendant's wrongful and arbitrary denial of Plaintiff's eligibility for long term disability benefits, Plaintiff has and will continue to incur damages.

**COUNT II:**
**RECOVERY OF UNDER PAYMENT OF BACK BENEFITS**

38.     Plaintiff restates the allegations contained in paragraphs 1 through 37 above as if fully restated herein.

39.     Plaintiff's administrative appeals to Defendant included her request for a review of the amount of her monthly earnings used to compute her monthly LTD benefit.

40.     In its final 2017 claim decision, Defendant acknowledged that it had mischaracterized sales bonuses received as compensation by Plaintiff which should have been included in computing her monthly LTD benefit.

41.     Defendant noted that Plaintiff's scheduled monthly benefit should properly have been calculated as $9,582.56.

42.     The miscalculation of Plaintiff's benefit resulted in a monthly under payment by Defendant of Plaintiff's LTD benefits in the amount of $4,182 from June 2012 until April 2016.

43.     As a result, Plaintiff is entitled to the correct, higher benefit amount with the reinstatement of her LTD benefits, as well as a recovery of the under paid back benefits.

44.     As of March 2019, Defendant owes Plaintiff a total of $450,742 in under paid and unpaid back LTD benefits.


WHEREFORE, Plaintiff demands judgment against Defendant to reinstate her eligibility for long term disability benefits payable under the Plan, effective May 2016; to make back payment of LTD benefits due of $450,742 (based on the corrected monthly benefit amount of $9,582.56); to nullify Defendant's demands for repayment of previously paid benefits; for interest, costs and attorney's fees under ERISA; and for any and all other relief deemed just and equitable.

__*s / R. Mark Henry*_____
R. Mark Henry     (0062546)
130 W. Second St., Suite 1818
Dayton, Ohio   45402
Telephone: (937) 226-1212
Fax: (937) 226-1224
Email: *rmhenry@donet.com*
Trial Attorney for Plaintiff Diana M. Nelson

8